UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NJYA GHARWAL,

Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEM; BANK OF AMERICA, N.A.; MERSCORP, INC.; all other persons, unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein,

Defendants.

Case No. 13-CV-0685 (PJS/JSM)

ORDER

---

William B. Butler, BUTLER LIBERTY LAW, LLC, for plaintiff.

Andre T. Hanson and Brent R. Lindahl, FULBRIGHT & JAWORSKI LLP, for defendants Federal National Mortgage Association, Mortgage Electronic Registration System, Bank of America, N.A., and MERSCORP, Inc.

In this action, plaintiff Njya Gharwal[1] seeks to invalidate the foreclosure of the mortgage on her home. Gharwal asserts two claims: (1) a quiet-title claim — i.e., a claim to determine adverse claims under Minn. Stat. § 559.01, and (2) a claim for a declaratory judgment.[2]

---

[1]Some documents in the record indicate that plaintiff's name may be spelled "Najya." The Court adopts the spelling used by plaintiff's counsel in the complaint.

[2]Gharwal also purports to assert a claim of slander of title against someone or something identified as "PFB." According to defendants, "PFB" refers to the law firm of Peterson Fram & Bergman, PA, which conducted the foreclosure at issue in this case. But PFB is not mentioned in the caption of the complaint or in the section of the complaint in which Gharwal identifies the parties. *See* Compl. ¶¶ 1-6. Moreover, neither the original nor amended summons was directed to PFB. ECF No. 1-1 at 2, 5. PFB is simply not a party to this lawsuit.

In their briefing, defendants argue that the slander-of-title claim fails to allege any basis

(continued...)

Defendants Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration System ("MERS"), Bank of America, N.A. ("BOA"), and MERSCORP, Inc. ("MERSCORP") move to dismiss Gharwal's complaint for failure to state a claim. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Gharwal resides in and is in possession of real property located at 1731 Crossings Boulevard in Shakopee, Minnesota. Compl. ¶ 1. Gharwal acquired her interest in the property via warranty deed in 2004. Compl. ¶ 2. On February 23, 2007, Gharwal executed and delivered a $239,200 promissory note to America's Wholesale Lender ("AWL") as well as a mortgage securing the note to MERS (as nominee for AWL). Compl. ¶ 7; Compl. Ex. 1. A printout from a MERS database currently lists Fannie Mae as an "investor" on the loan. Compl. ¶ 9; ECF No. 17.[3]

On December 8, 2011, Amanda Stackhouse executed an assignment of Gharwal's mortgage from MERS to BOA; that assignment was recorded in the Scott County Office of the Recorder the next day. Compl. ¶ 10; Compl. Ex. 2. The assignment indicates that Stackhouse

[2](...continued)
for holding defendants liable. Gharwal did not respond to this argument; in fact, she did not say a word about her slander-of-title claim. The Court therefore treats Gharwal as having conceded that, because her slander-of-title claim does not allege any wrongdoing by any defendant to this case, it should be dismissed. (The Court notes that, even if Gharwal had pursued a slander-of-title claim against PFB, the Court would have dismissed the claim and found that PFB was fraudulently joined, as there is no basis for imposing liability on PFB.)

[3]According to the complaint, this printout was supposed to be attached as Exhibit 2. It was not attached to the complaint, but Gharwal submitted it to the Court after the hearing on defendants' motion. The Court will treat the printout as though it had been attached to the complaint.

executed the assignment in her capacity as an assistant secretary of MERS. Compl. ¶ 10. Gharwal alleges that Stackhouse did not have the authority to execute the assignment because she was actually an employee of BOA rather than MERS. Compl. ¶ 11; Compl. Ex. 3.

In February 2012, BOA initiated a foreclosure by advertisement, and Gharwal's property was sold at a sheriff's sale on April 24, 2012. Compl. ¶¶ 20, 22; Compl. Ex. 7. Gharwal alleges that the foreclosure was invalid because: (1) at some point before the foreclosure sale, her mortgage was assigned to Fannie Mae; (2) that assignment was not recorded; and therefore (3) the foreclosure failed to comply with Minn. Stat. § 580.02(3), "which requires all assignments of a mortgage to be recorded before a party is entitled to make a foreclosure by advertisement . . . ." *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 59 (Minn. 2013); *see* Compl. ¶ 23. Gharwal is not clear about who supposedly made this unrecorded assignment to Fannie Mae. In her complaint, Gharwal alleges that BOA made the unrecorded assignment — presumably after MERS purported to assign the mortgage to BOA in December 2011. Compl. ¶ 23. At oral argument, however, Gharwal suggested that it may have been either MERS or AWL who made the unrecorded assignment to Fannie Mae.[4]

## II. ANALYSIS

### *A. Standard of Review*

In reviewing a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable

[4]Gharwal also alleges that the post-sale transfer of her property from BOA to Fannie Mae was invalid. Compl. ¶¶ 24-27. At oral argument, Gharwal clarified that this allegation is based solely on her claim that the foreclosure was invalid. In other words, Gharwal claims that because the foreclosure was invalid, BOA never acquired her property, and because BOA never acquired her property, BOA could not transfer it to Fannie Mae or anyone else.

inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court is not required to credit legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

*B. Validity of Foreclosure*

Gharwal claims that BOA's foreclosure of the mortgage on her home was invalid.[5] Before addressing that claim, however, the Court first must address Gharwal's argument that she does not need to allege *any* reason why the foreclosure may be invalid in order to sufficiently

---

[5]Defendants contend that Gharwal lacks standing to attack the foreclosure because she initiated this action after the redemption period had expired. For the reasons given in *Stein v. Chase Bank USA, N.A.*, No. 10-0203, 2011 WL 882088 (D. Minn. Mar. 11, 2011), the Court does not agree. The Court also notes that in *Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53, 59 (Minn. 2013), the Minnesota Supreme Court held that a foreclosure was "void for failure to strictly comply with Minn. Stat. § 580.02(3), which requires all assignments of a mortgage to be recorded before a party is entitled to make a foreclosure by advertisement . . . ." This challenge to the validity of the foreclosure in *Ruiz* — the same challenge that Gharwal raises to the validity of the foreclosure in this case — was successful even though the mortgagee in *Ruiz* (like Gharwal in this case) had filed suit *after* the redemption period had expired. *Id.* at 55.

plead a quiet-title claim under Minnesota law. Specifically, Gharwal argues that, in order to state a quiet-title claim under § 559.01, she need only allege that she is in possession of the property and that the defendants claim an adverse interest. In other words, Gharwal argues that she need not even allege — must less have a reasonable basis for alleging — that the defendants' interest in her property is *invalid*. Moreover, Gharwal alleges that, once a defendant is sued under § 559.01, the defendant bears the burden of proving that its interest in the property is valid. According to Gharwal, the plaintiff in a quiet-title case does not have to prove anything except that she is in possession of the property. As Gharwal would have it then, a homeowner facing foreclosure can bring a quiet-title action against the mortgagor even if the homeowner knows full well that the mortgagor's interest in the property is valid. The homeowner's quiet-title claim is essentially immune from being dismissed under Rule 12(b)(6), which means that the mortgagor must fully litigate the case and bear the expense of proving that its interest in the property is valid. Not incidentally, during the months or years that litigation is pending, the homeowner can live "rent free" in her home (as Gharwal appears to have done for roughly two years now).

The Eighth Circuit has squarely and repeatedly rejected this argument, holding that § 559.01 and the other authority on which Gharwal relies "are only the state pleading rules; they are not state substantive standards that govern the success of a quiet title claim." *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013). In other words, the Eighth Circuit has agreed with Gharwal that under Minnesota pleading standards a plaintiff bringing a quiet-title action under § 559.01 needs to plead only that she is in possession of the property and that the defendants claim an adverse interest. But when a lawsuit is filed in or removed to federal court, it is the federal pleading standards — specifically, Rules 8 and 9, as interpreted by

*Twombly* and *Iqbal* — that apply, not the Minnesota pleading standards. *Id.* The Eighth Circuit has disagreed with Gharwal that § 559.01 or the other authority on which she relies go beyond establishing pleading rules and also impose on defendants the burden of proving that their interest in the property is valid. *Id.* In sum, the Eighth Circuit has been clear that, in order to survive a Rule 12(b)(6) motion, a complaint must plead adequate facts to establish a plausible "claim that the defendants' adverse claims are *invalid* . . . ." *Id.* (emphasis added); *see also Novak v. JPMorgan Chase Bank, N.A.*, 518 Fed. Appx. 498, 501-02 (8th Cir. 2013); *Vang v. PNC Mortg., Inc.*, 517 Fed. Appx. 523, 526-27 (8th Cir. 2013); *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1257 (8th Cir. 2013).

Gharwal argues that *Karnatcheva* was wrongly decided because "[t]he 8th Circuit did not address that Defendants in that case had the burden of proof with respect to the quiet title action." ECF No. 11 at 7. According to Gharwal, "[t]his was error because burden of proof is a state substantive law right not a state pleading standard." *Id.* But *Karnatcheva* did indeed address the argument that defendants bear the burden of proof in a quiet-title action; *Karnatcheva* rejected that argument, specifically holding that § 559.01 and the other authority on which Gharwal relies "are not state substantive standards that govern the success of a quiet title claim." *Karnatcheva*, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; *Karnatcheva* is binding precedent, and this Court must apply it. The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is

invalid." *Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 988 (D. Minn. 2012), *aff'd*, 720 F.3d 736 (8th Cir. 2013).[6]

The Court must therefore consider whether Gharwal's complaint alleges a plausible basis for believing that defendants' asserted interest in her property is invalid. Again, Gharwal claims that the foreclosure was invalid for two reasons: First, Gharwal argues that BOA did not own the mortgage because Amanda Stackhouse, who executed the assignment of the mortgage from MERS to BOA, was not an agent of MERS and therefore lacked authority to execute the assignment. Second, Gharwal alleges that someone — she is not sure who — made an unrecorded assignment of the mortgage to Fannie Mae, and that, under Minn. Stat. § 580.02, the unrecorded assignment precludes a foreclosure by advertisement.[7]

1. Stackhouse's Authority to Execute the Assignment

Gharwal first alleges that BOA's foreclosure was invalid because Stackhouse lacked authority to execute the December 2011 assignment of the mortgage from MERS to BOA.

---

[6]Although Rule 11 does not apply in state court (where *Welk* and this case were originally filed), Rule 11 applies after a state-court case is removed to federal court and forbids a party from "later advocating" a pleading that does not have an objectively reasonable basis in law and fact. *See* Fed. R. Civ. P. 81(c)(1); Fed. R. Civ. P. 11(b).

[7]The complaint contains a third possible basis for alleging that the foreclosure was invalid — namely, that Gharwal "specifically denies that any named Defendant or their predecessor in interest has or had a legal right to declare a default on the Note." Compl. ¶ 8. Gharwal also alleges that defendants cannot prove a default. Compl. ¶ 8. These are merely legal conclusions of the type that the Court is not required to credit. Notably, Gharwal does not allege that she is *not* in default — in fact, she conspicuously fails to allege that she made the payments that she was required to make under the note — and she does not allege any other factual basis for her allegations that defendants cannot prove a default and lack the legal right to declare a default. Moreover, Gharwal did not mention these allegations either in her briefing or at oral argument in response to defendants' motion to dismiss. The Court therefore need not address them further.

Gharwal bases this allegation solely on the fact that, at the time that Stackhouse executed the assignment, she was employed by BOA.

This fact alone, however, does not provide any reason for doubting Stackhouse's authority to execute the assignment on MERS's behalf. First, Gharwal's argument is a legal non sequitur: Nothing precludes an individual from simultaneously being an employee of one entity and an agent of another. Indeed, it is common to find individuals who are agents of multiple entities. Second, as the Minnesota Supreme Court explained in *Jackson v. Mortgage Electronic Registration Systems, Inc.*, it is MERS's usual practice to appoint employees of its members to act as its agents for the purpose of executing assignments:

> When documentation is necessary, such as for an assignment to a non-MERS member, MERS does not draft or execute the paperwork on behalf of its members. Rather, MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS. This procedure allows the member that owns the indebtedness to assign or foreclose the mortgage loan in the name of MERS, eliminating the need to either work through a third party or to execute an assignment of the security instrument from MERS back to the member.

770 N.W.2d 487, 491 (Minn. 2009). The fact that Stackhouse was an employee of BOA when she executed the assignment on behalf of MERS is perfectly consistent with this practice. Thus, merely alleging that Stackhouse was employed by BOA does not establish a plausible basis for the claim that Stackhouse lacked authority to execute the assignment on behalf of MERS.

2. Unrecorded Assignment to Fannie Mae

Gharwal next alleges that the foreclosure was invalid because someone (she does not know who) assigned her mortgage to Fannie Mae prior to the foreclosure sale and that

assignment was not recorded. Under Minnesota law, all assignments of the mortgage must be recorded before a mortgage holder can commence a foreclosure by advertisement. Minn. Stat. § 580.02(3); *Ruiz*, 829 N.W.2d at 54.

Relying on *Propes v. Aurora Loan Services*, No. 12-1784, 2012 WL 5844971 (D. Minn. Nov. 19, 2012), defendants argue that this rule does not apply when there is a clear chain of record title from the original mortgage holder to the foreclosing entity. *Propes*, however, is distinguishable. In *Propes*, MERS twice attempted to assign the mortgage, but the county recorder rejected the assignments because they were not in recordable form. *Id.* at *1. On the third attempt, MERS was able to execute and record a proper assignment. *Id.* The plaintiff alleged that the earlier, unrecorded (and unrecordable) assignments precluded foreclosure by advertisement. *Id.* at *2. Judge Tunheim rejected this argument, holding that, under Minnesota law, an assignment that is not in recordable form is not sufficient to assign a mortgage. *Id.* at *2. In other words, in *Propes* there were no unrecorded assignments because the unrecordable assignments were legally ineffective. *Propes* thus does not stand for the proposition that a clear chain of record title permits foreclosure by advertisement even if there is an unrecorded assignment.

Gharwal alleges two bases for believing that there was an unrecorded assignment of her mortgage to Fannie Mae. First, she points to a Fannie Mae guideline that requires mortgages to be assigned to Fannie Mae under certain circumstances. The guideline states as follows:

> By delivering a MERS-registered mortgage to Fannie Mae, the lender: . . . .
>
> - agrees that, in the event that either its membership in MERS or the MERS registration for an active mortgage is

> terminated for any reason while Fannie Mae has an ownership interest in the mortgage, the servicer is responsible for preparing and recording an assignment of the mortgage from MERS to itself, and then preparing (in recordable form) an assignment of the mortgage from itself to Fannie Mae and delivering that assignment to Fannie Mae's DDC (or to the applicable document custodian).

Compl. Ex. 4 at 2-3. Pointing to a printout from a MERS database (ECF No. 17), Gharwal claims that the MERS registration for her mortgage was terminated at some point. If the MERS registration for her mortgage was terminated, Gharwal argues, then, under this guideline, her lender was required to ensure that her mortgage was assigned to Fannie Mae. Hence, there must have been an unrecorded assignment to Fannie Mae.

But this guideline does not provide a plausible basis for alleging that Gharwal's mortgage was assigned to Fannie Mae (and that this assignment was not recorded) prior to the foreclosure sale. By its plain language, this guideline only requires an assignment to Fannie Mae under the following circumstances:

(1) the lender delivered a MERS-registered mortgage to Fannie Mae;

(2) either (a) the lender's membership in MERS terminated, or (b) the MERS registration for the mortgage terminated; and

(3) the termination happened while Fannie Mae had an ownership interest in the mortgage.

There are several problems with Gharwal's argument. First, Gharwal has no basis for alleging that her lender delivered her mortgage to Fannie Mae in the first place — which is a prerequisite to the application of this guideline. Second, even if Gharwal had plausibly alleged that her mortgage had been delivered to Fannie Mae, the printout on which she bases her allegations does not, in fact, say that the MERS registration for her mortgage was terminated.

And finally, even if the printout did report that the MERS registration for her mortgage had been terminated, this document was printed in February 2013, nearly ten months after the foreclosure sale. In other words, the MERS registration could have been terminated *after* the foreclosure, which would give Gharwal no basis for alleging that an unrecorded assignment had been made *before* the foreclosure.

Gharwal's second basis for claiming that there was an unrecorded assignment to Fannie Mae is a document entitled "Custodial Agreement." Compl. Ex. 6. This document appears to be a form contract intended for use by Fannie Mae, lenders, and document custodians, with blanks for the name of the lender. It recites that Fannie Mae and the lender are parties to a Pool Purchase Contract which provides for Fannie Mae's purchase of certain mortgage loans. Among other things, the agreement requires the lender to deliver to the document custodian certain documents regarding the Pool Purchase Contract loans on or before something called the "Issue Date" (which is not defined in the document). In particular, the document requires delivery of a

> [d]uly completed and executed assignment to [Fannie Mae] of the mortgage, deed of trust, or other security instrument in form suitable for recording but not recorded with respect to each Mortgage or a duly completed and executed power of attorney to [Fannie Mae] to assign the Mortgages[.]

Compl. Ex. 6 at 2.

Gharwal points to this language to contend that there must have been an assignment of her mortgage to Fannie Mae "in form suitable for recording but not recorded." The problem with this argument, though, is that the exhibit attached to Gharwal's complaint has nothing to do with Gharwal's loan or mortgage. It is not an actual contract; it is an undated and unexecuted form, and none of its blanks are filled in. By its terms, the document only requires delivery of an

assignment with respect to loans that are a part of a particular Pool Purchase Contract. But the document does not refer to any Pool Purchase Contract, much less one involving Gharwal's loan. Moreover, the provenance of this document is a mystery. Other than stating that it is part of Fannie Mae's "Trust Indenture" (about which the complaint gives no details), Gharwal does not allege where she got it. Nor does she explain why it has anything to do with this case; she does not even allege that it is a document that was in use by Fannie Mae at the time she took out her loan.

Simply put, this document does not provide a plausible basis for Gharwal's claim that her mortgage was assigned to Fannie Mae prior to the foreclosure sale. Without such a basis, Gharwal's bare allegation that there was an unrecorded assignment of her mortgage to Fannie Mae is not sufficient to state a claim. The Court therefore grants defendants' motion to dismiss.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss [ECF No. 4] is GRANTED.

2. Plaintiff's complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2013

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge